UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

|  |  |
|---|---|
| DAVID RAINERO,<br><br>          Plaintiff,<br><br>vs.<br><br>ARCHON CORPORATION,<br><br>          Defendant. | Case No.: 2:07-cv-1553-GMN-PAL<br><br>**ORDER** |

Pending before the Court is the case of *Rainero v. Archon Corporation*, (2:07-cv-1553-GMN-PAL). On September 11, 2014, the Court entered an Order requiring Plaintiff David Rainero to show cause as to why this case should not be dismissed for lack of subject matter jurisdiction. (ECF No. 82). On September 19, 2014, Plaintiff and Defendant, Archon Corporation ("Archon"), each filed a Response. (ECF Nos. 83 & 85). For the reasons stated herein, the Court will dismiss this case without prejudice.

**I.    BACKGROUND**

On August 20, 1993, Archon, then known as "Sahara Gaming Corporation," created a class of equity securities designated as Exchangeable Redeemable Preferred Stock ("Preferred Stock"). Archon filed a Certificate of Designation for the Preferred Stock with the Nevada Secretary of State on September 30, 1993. (Ex. 1 to Compl., ECF

No. 1-4). This certificate stated that Archon had the right to redeem the Preferred Stock, in whole or in part, at any time, upon giving shareholders between thirty and ninety days' notice. (*Id.* at 4). The certificate also provided that, upon redemption, shareholders would be entitled to the sum of "$2.14, plus an amount equal to all accrued and unpaid dividends for the then current Dividend Period, through the date of liquidation, dissolution or winding up, plus all prior Dividend Periods, whether or not declared," for each share of Preferred Stock. (*Id.* at 7).

On July 31, 2007, Archon issued a Notice of Redemption to all holders of Preferred Stock announcing that it would "redeem all of the outstanding shares of the Preferred Stock . . . as of the close of business on August 31, 2007." (Compl. 3:8-12, ECF No. 1). Archon subsequently redeemed the Preferred Stock for a price of $5.241 per share. (*Id.* at 3:13-15). Plaintiff claims to have held 9140 shares of Preferred Stock that were redeemed at that time. (*E.g.*, Pl.'s Br. at 7, ECF No. 83).

The Complaint alleges that, under the terms of the Certificate of Designation, the redemption price should have been $8.49, and he and other shareholders were entitled to receive $3.45 per share more than was paid upon the redemption. (Compl. 2:18-21).

Plaintiff filed this action on November 20, 2007, seeking relief under the terms of the Preferred Stock as set forth in the Certificate of Designation. (Compl.). Plaintiff seeks to represent a class consisting of all holders of Preferred Stock as of August 31, 2007, with the exception of Archon's directors and certain investment groups that litigated their claims separately[1]. (*Id.* at 5:15-25).

///

---

[1] The other action, *D.E. Shaw Laminar Portfolios, L.L.C. v. Archon Corporation* was filed on August 27, 2007. 755 F. Supp. 2d 1122 (D. Nev. 2010). On December 22, 2010, the court entered a judgment requiring that Archon pay $3.449 per share to the plaintiffs in that case. *Id.* This ruling was subsequently upheld by the Ninth Circuit. *D.E. Shaw Laminar Portfolios, L.L.C. v. Archon Corp.*, 483 F. App'x 358 (9th Cir. 2012).

## II. LEGAL STANDARD

Federal courts are courts of limited jurisdiction, possessing only those powers granted by the Constitution and statute. *See United States v. Marks*, 530 F.3d 799, 810 (9th Cir. 2008).  There is a strong presumption against subject matter jurisdiction, and the burden of overcoming this presumption falls upon the party asserting that jurisdiction exists. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

A court may raise the question of subject matter jurisdiction *sua sponte* at any time during an action. *United States v. Moreno–Morillo*, 334 F.3d 819, 830 (9th Cir. 2003). Regardless of who raises the issue, "when a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006).

## III. ANALYSIS

Plaintiff argues that the Court has federal question jurisdiction over this case pursuant to 28 U.S.C. § 1331 and diversity jurisdiction pursuant to 28 U.S.C. §§ 1332(d)(1) and (2).  The Court will address each of these arguments in turn.

### A. Federal Question Jurisdiction

Under 28 U.S.C. § 1331 federal district courts have subject matter jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States."  Though he admits this action is "based on Nevada contract law," (Pl.'s Br. at 10), Plaintiff nonetheless asserts that a provision of the Securities Litigation Uniform Standards Act ("SLUSA") renders his claim to be a federal question.  To support this contention, Plaintiff quotes 15 U.S.C. § 77p(d)(1)(A), which states "Notwithstanding subsection (b) or (c), a covered class action described in subparagraph (B) of this paragraph that is based upon the statutory or common law of the State in which the issuer is incorporated . . . may be maintained in a State or Federal court by a private party."

Plaintiff points out that subsection (B) of that provision defines a "covered class action" as one involving "the purchase or sale of securities by the issuer or an affiliate of the issuer exclusively from or to holders of equity securities of the issuer." 15 U.S.C. § 77p(d)(1)(B). Therefore, Plaintiff reasons, because this case is based upon the law of Nevada, where Archon is incorporated, and involves Archon's purchase of its own Preferred Stock, 15 U.S.C. § 77p(d)(1) grants the Court subject matter jurisdiction.

Viewing these statutory provisions in a vaccum, Plaintiff's argument appears to have merit. However, one look at the surrounding statutory scheme reveals that these provisions cannot accurately be read as an affirmative grant of subject matter jurisdiction. Indeed, the D.C. Circuit recently discussed this statute thoroughly in *Campbell v. American International Group., Inc.*, 760 F.3d 62 (D.C. Cir. 2014). In that case, the court observed that 15 U.S.C. § 77p "address[es] preclusion—that is, whether certain state-law class actions that might otherwise be justiciable are nonetheless 'nonactionable' in either state or federal court." *Campbell*, 760 F.3d at 64-65. The court explained that § 77p(b) precludes certain categories of class actions from being heard in either federal or state courts, and Section 77p(d) serves the function of carving out an exception "to the preclusive reach of subsection (b)." *Id.*

The *Campbell* court then went on to address the very jurisdictional argument Plaintiff raises in the instant case,

> There is no indication, however, that Congress intended subsection (d)(1)(A) to go substantially further, so as to create federal jurisdiction over a category of state-law securities class actions. To the contrary, the introductory clause of subsection (d)(1)(A)—'Notwithstanding subsection (b) or (c)'—confirms that the provision responds to subsections (b) and (c). It does not embark on a wholly independent mission to confer federal-court jurisdiction on state-law actions. Indeed, the operative language of subsection (d)(1)(A), which permits certain class actions to "be maintained in a State or Federal court," directly parallels the language of subsection

> (b). That symmetry indicates that subsection (d)(1)(A)'s use of the phrase, 'may be maintained,' serves only to negate the preclusive effect of subsection (b) with regard to a certain category of class actions, nothing more. And subsection (d)(1)(A)'s use of the term 'preserve,' meaning 'to keep (something) in its original state, manifests Congress's intent to retain the state-law claims falling within [(d)(1)(A)] in their pre-SLUSA state—not to inject those claims into federal court for the first time.

*Id*. (internal citations omitted). The Court adopts *Campbell*'s holding that § 77p(d) does not grant subject matter jurisdiction over state-law securities class actions, as this interpretation is consistent with the statute's structure and purpose. Therefore, because Plaintiff's argument is based upon an erroneous reading of 77p(d), he has failed to demonstrate that federal question jurisdiction applies in this case.

### B. Class Action Diversity Jurisdiction

The requirements for diversity jurisdiction over a class action are set forth in 28 U.S.C. § 1332(d). The Court generally has "original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and . . . any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2). However, class actions that solely involve a claim relating to "the rights, duties . . . and obligations relating to or created by or pursuant to any security" are excluded from the jurisdiction granted under this section. 28 U.S.C. § 1332(d)(9)(C). This exclusion incorporates the broad definition of "security" contained in 15 U.S.C. § 77b(a)(1), which provides,

> The term "security" means any note, stock, treasury stock, security future, security-based swap, bond, debenture, evidence of indebtedness, certificate of interest or participation in any profit-sharing agreement, collateral-trust certificate, preorganization certificate or subscription, transferable share, investment contract, voting-trust certificate, certificate of deposit for a security, fractional

> undivided interest in oil, gas, or other mineral rights, any put, call, straddle, option, or privilege on any security, certificate of deposit, or group or index of securities (including any interest therein or based on the value thereof), or any put, call, straddle, option, or privilege entered into on a national securities exchange relating to foreign currency, or, in general, any interest or instrument commonly known as a "security", or any certificate of interest or participation in, temporary or interim certificate for, receipt for, guarantee of, or warrant or right to subscribe to or purchase, any of the foregoing.

It is well established that preferred stock constitutes a "security" as defined in 15 U.S.C. § 77b(a)(1). *See, e.g.*, *National Supply Co. v. Leland Stanford Junior Univ.*, 134 F.2d 689 (9th Cir. 1943). Indeed, both parties in this case admit that the Preferred Stock qualifies as a security. (Pl.'s Br. at 15); (Def.'s Br. 4:23-24).

Nonetheless, Plaintiff argues that the subsection (d)(9)(C) exclusion does not apply, because the Preferred Stock "was not in existence at the time this action was filed . . . ." (Pl.'s Br. at 7). Though Plaintiff is correct that the redemption occurred before this action was filed, this fact has no bearing upon the applicability of the subsection (d)(9)(C) exclusion to this case. Rather than specifying that a claim must relate to an *existing security*, this provision excludes any class action whose sole claim "relates to *the rights, duties, and obligations relating to or created by or pursuant to* any security." 28 U.S.C. § 1332(d)(2) (emphasis added). As Plaintiff claims that he and other shareholders were not sufficiently compensated pursuant to the terms of the Preferred Stock, the subsection (d)(9)(C) exclusion prevents the Court from exercising jurisdiction over this action pursuant to 28 U.S.C. § 1332(d).

///

///

///

### C. Individual Diversity Jurisdiction

Plaintiff asserts that even if the Court lacks jurisdiction over this case as a class action, it may properly exercise diversity jurisdiction over his claim individually. (Pl.'s Br. at 16).

In order to qualify for diversity jurisdiction as a non-class action, Plaintiff must show (1) that his claim, by itself, exceeds the sum or value of $75,000 and (2) that the case is between citizens of different States. 28 U.S.C. § 1332(a); *see also Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 859 (9th Cir. 2001) (noting that class action plaintiffs cannot aggregate the values of their claims in order to satisfy the amount-in-controversy requirement).  Despite the fact that the Complaint states three times that Plaintiff is seeking recovery in the amount of only $3.45 per share, (Compl. 2:20-21, 5:11-13, 7:8-9), Plaintiff now demands an additional $6.8165 per share for unpaid dividends that have accrued since the Complaint was filed, (Pl.'s Brief at 17).[2]  Thus, while the Complaint alleges that Plaintiff is entitled to a sum of only $31,533, Plaintiff's new allegations would increase this total to $93,826.67, based on the 9140 shares of Preferred Stock he claims to have held at the time of the redemption. (*Id.* at 13).

However, it is well established that, when determining an amount in controversy, the Court may only look to damages that existed when a complaint was filed and may not consider damages that have arisen during the pendency of an action. *See, e.g.*, *Hart v. Schering-Plough Corp.*, 253 F.3d 272, 273 (7th Cir. 2001) ("The amount in controversy is whatever is required to satisfy the plaintiff's demand, in full, on the date suit begins."). Because the additional dividends for which Plaintiff now seeks to recover did not arise

---

[2] Notably, the *D.E. Shaw* court awarded $3.449 per share plus prejudgment interest to the holders of Archon Preferred Stock that were joined in that case. *D.E. Shaw Laminar Portfolios, LLC v. Archon Corp.*, 755 F. Supp. 2d 1122, 1130 (D. Nev. 2010).

prior to the time he filed this action on November 20, 2007, they cannot properly be included within the Court's calculation of the amount in controversy.

Citing *Massachusetts Casualty Insurance Company v. Rossen*, 953 F. Supp. 311, 312 (C.D. Cal. 1996), Plaintiff argues that post-filing damages are considered to be within the amount in controversy in cases involving "an unconditional right to future payment." (Pl.'s Br. at 17). *Rossen* involved an insurer seeking declaratory relief that one of its insureds was not entitled to monthly benefits. 953 F. Supp. at 312. Despite the fact that the insurer had paid only $39,664.23 at the time it filed the action, the *Rossen* court held that the amount in controversy requirement was satisfied because the insurer's continued monthly payments would bring the total above the jurisdictional minimum before the case proceeded to trial. *Id.*

Though *Rossen* appears to support the notion that the alleged post-filing dividends should be included within the amount in controversy, its holding is directly at odds with the Supreme Court's decision in *Aetna Casualty & Surety Company v. Flowers*, 330 U.S. 464 (1947). *Flowers* involved a widow who sought death benefits from her husband's employer pursuant to Tennessee law. 330 U.S. at. 465. The statutory scheme at issue required that any award be divided up into regular payments that would terminate if the recipient remarried or died before the amount was paid in full. *Id.* at 467. Even though the portion of the requested damages that would have been due when the action commenced did not exceed the jurisdictional minimum, the Court ruled that the nature of the Tennessee statute required that the amount in controversy include the total sum sought by the plaintiff. *Id.*

The *Flowers* Court went on to reject the very conclusion upon which Plaintiff now relies, stating, "If this case were one where judgment could be entered only for the installments due at the commencement of the suit, future installments could not be

considered in determining whether the jurisdictional amount was involved, even though the judgment would be determinative of liability for future installments as they accrued." *Id.* Therefore, the Court declines to follow *Rossen*'s holding, as *Flowers* cannot correctly be read to broadly require that post-filing damages be included within the amount in controversy when a party holds a right to future payment.[3] Instead, *Flowers* stands for the proposition that post-filing damages may be considered only when a cause of action requires that an award be paid in increments—a principle which is not applicable to the instant case.

Thus, the dividends that allegedly accrued after this case was filed cannot properly be considered within the amount in controversy. Furthermore, there is no evidence to indicate that the amount in controversy exceeds the $31,533 estimate put forward in the Complaint. Accordingly, Plaintiff has failed to demonstrate that the amount in controversy satisfies the $75,000 threshold.

Finally, Plaintiff implores the Court not to dismiss this case and thereby force more than 500 putative class members to start over. (Pl.'s Br. at 6). However, subject matter jurisdiction is not subject to the Court's discretion—it is a doctrine of preeminent importance that determines whether the Court holds the requisite authority to issue a judgment in this case. Unlike procedural defects, which can often be disregarded if not timely raised, "subject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006). Therefore, the Court is not at liberty to exceed the scope of its statutory and constitutional authority for the sake of Plaintiff's convenience.

///

---

[3] In his brief, Plaintiff failed to acknowledge that the Northern District of California has rejected *Rossen*'s holding for very similar reasons. *New York Life Ins. Co. v. Regelson-Blanck*, 2004 WL 2403841, at *5 (N.D. Cal. Oct. 27, 2004).

IV. **CONCLUSION**

**IT IS HEREBY ORDERED** that the Complaint is DISMISSED without prejudice.  The clerk is instructed to enter judgment accordingly and close the case.

**DATED** this __29__ day of September, 2014.

_____
Gloria M. Navarro, Chief Judge
United States District Court